UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

U.S. COMMODITY FUTURES TRADING
COMMISSION,

                Plaintiff,

          - against –

SAFETY CAPITAL MANAGEMENT, INC. (d/b/a
"FOREXNPOWER"), GNS CAPITAL, INC. (d/b/a
"FOREXNPOWER"), JOHN H. WON, SUNGMI
KANG, and TAE HUNG KANG,

                Defendants.

-------------------------------------------------------------------- x

**REPORT AND
RECOMMENDATION**

15-cv-5551 (NGG) (PK)

**Peggy Kuo, United States Magistrate Judge:**

The U.S. Commodity Futures Trading Commission (the "Commission") brought this action

against Safety Capital Management, Inc. (d/b/a "ForexnPower") ("Safety Capital"), GNS Capital, Inc.

(d/b/a "ForexnPower") ("GNS," together with Safety Capital, "Defaulting Defendants"), John H.

Won, Sungmi Kang,[1] and Tae Hung Kang (collectively referred to as "Defendants"), alleging

violations of the Commodity Exchange Act, 7 U.S.C. §§ 1 et seq. (2001) (the "Act") and Commission

Regulations (the "Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 et seq. (2001).  (Compl.,

Dkt. 1.)  Before the Court on referral from the Honorable Nicholas G. Garaufis is Plaintiff's Motion

for Default Judgment ("Motion," Dkt. 74-1), seeking judgment against the Defaulting Defendants.

(Aug. 25, 2025 Order.)  For the reasons stated herein, the undersigned respectfully recommends that

the Motion be granted and damages be awarded as detailed below.

---

[1] On August 25, 2025, the Court dismissed all claims against Sungmi Kang because she had passed away.  (Aug. 25, 2025 Order, Dkt. 75 at 2.)

## BACKGROUND

### I.    Factual Background

The following facts are taken from the Complaint (Dkt. 1) and are accepted as true for purposes of this Motion.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

Defaulting Defendant Safety Capital is a New York corporation that did business as "ForexnPower," and Mr. Kang was its Chief Executive Officer ("CEO"); neither Safety Capital nor Mr. Kang has ever been registered with the Commission.  (Compl. ¶¶ 18, 22.)  Safety Capital acted as an unregistered Commodity Pool Operator ("CPO") with Mr. Kang as its unregistered Associated Person ("AP") when it told retail foreign currency ("forex") customers that their funds would be pooled as a commodity pool and that Safety Capital and Mr. Kang would manage that pool.  (*See id.* ¶¶ 49–51.)  Instead of using customer pool funds for retail off-exchange forex trading, Safety Capital misappropriated this money for personal and business expenses.  (*See id.* ¶ 42.)

Defaulting Defendant GNS is a New York corporation that did business as "ForexnPower" and has been registered with the Commission as a CPO and commodity trading advisor ("CTA") since October 21, 2013.  (*Id.* ¶ 19.)  GNS's last known place of business was in Queens, New York.  (*See id.* ¶ 19.)  Mr. Won was the President of GNS and was registered with the Commission as an AP of GNS from August 2013 to February 2014.  (*Id.* ¶ 20.)

Safety Capital and GNS acted as CTAs by collectively managing the retail forex trading accounts of at least 55 clients, providing retail forex trading advice for compensation or profit, and using mail, internet, and other means of interstate commerce to engage in retail forex transactions.  (*Id.* ¶¶ 53–54.)

While acting as unregistered CPOs and CTAs, Safety Capital and GNS did not qualify for any statutory or regulatory exemptions for registering with the Commission.  (*See id.* ¶¶ 52, 55.)

Safety Capital and GNS defrauded over 90 customers, in connection with retail off-exchange forex, of over $1.5 million in violation of the Act. (*Id.* ¶¶ 1–2.) Through ForexnPower, they placed advertisements in Korean language newspapers and radio channels falsely representing that they had a "secret trading method" to generate 10% or more monthly profits. (*Id.* ¶ 34.) They misappropriated over $622,000 from retail forex pool participants to pay for their business expenses and salaries instead of forex trading for investors. (*See id.* ¶ 43.) As a result, their retail forex customers lost a total of nearly $400,000. (*Id.* ¶¶ 3, 48.)

Safety Capital and GNS, while acting as CPOs, failed to operate their commodity pool as a separate legal entity and commingled pool funds with non-pool property. (*Id.* ¶ 49.) They solicited and accepted funds from investors in a commodity pool for trading retail forex contracts and deposited pool funds into their bank accounts rather than a separate bank account for the pool. (*See id.*)

Starting on or about October 21, 2013, GNS was registered with the Commission as a CPO and CTA. (*Id.* ¶ 51.) In April 2014, when the Commission served an administrative subpoena for documents on GNS at its business address and Mr. Won's home address, GNS did not respond. (*Id.* ¶ 60.) Mr. Won acknowledged receipt of the subpoena on behalf of GNS, but he and GNS failed to produce any information responsive to the Commission's subpoena. (*Id.* ¶ 61.)

## II.   Complaint

On September 24, 2015, the Commission filed a six-count Complaint against Defendants, alleging that from at least October 2010 through December 2013, Defendants, while acting as CTAs and CPOs, or APs thereof, fraudulently solicited customers and prospective customers for the purported purpose of trading a pooled investment in connection with agreements, contracts, or transactions in off-exchange foreign currency forex or to open retail forex accounts purportedly managed by Safety Capital and GNS. (*See id.* ¶¶ 1, 34).

3

The Complaint alleges six violations of the Act and Regulations:

1) **Count 1: Retail forex fraud** in violation of Sections 4b(a)(2)(A) and (C), 7 U.S.C. § 6b(a)(2)(A) and (C), and Regulation 5.2(b)(1) and (3), 17 C.F.R. 5.2(b)(1) and (3);

2) **Count 2: Fraud by a CPO or CTA (or AP thereof)** in violation of Section 4o(1)(A)–(B), 7 U.S.C. § 6o(1)(A)–(B);

3) **Count 3: Solicitation and acceptance of retail forex orders from retail forex clients without being registered** in violation of Section 2(c)(2)(C)(iii)(I)(aa)–(cc), 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa)–(cc);

4) **Count 4: Commingling pool funds with non-pool property** in violation of Regulation 4.20(a)–(c), 17 C.F.R. § 4.20(a)–(c);

5) **Count 5: Failure to register as retail forex CPOs and CTAs** in violation of Section 4m(1), 7 U.S.C. § 6m(1), and Regulation 5.3(a)(2)–(3), 17 C.F.R. § 5.3(a)(2)–(3); and

6) **Count 6: Failure to produce documents upon request from the Commission** in violation of Regulation 1.31, 17 C.F.R. § 1.31.

The Commission alleges that Safety Capital violated Counts 1 through 5, and that GNS violated Counts 1 through 6. (Compl. ¶¶ 62–110.) The Complaint also alleges that as a controlling person of Safety Capital, Mr. Kang violated Counts 1 through 5 and as a controlling person of GNS, Mr. Won violated all six counts against GNS. (*Id.*)

### III. Relevant Procedural Background

On October 5, 2015, the Summons and Complaint were served on Defendants, and proof of service was filed with the Court. (*See* Motion at 6; Proof of Service of Summons, Dkts. 5–6.) Mr. Kang and Mr. Won appeared *pro se*, but neither Safety Capital nor GNS filed an answer or otherwise responded to the Complaint, and on November 30, 2015, the Clerk entered certificates of default against them. (Certificate of Default against GNS, Dkt. 9; Certificate of Default against Safety Capital, Dkt. 10.)

Mr. Kang and Mr. Won were both charged in criminal proceedings in connection with the ForexnPower fraudulent scheme. On March 30, 2021, Mr. Kang pled guilty to securities fraud

4

conspiracy. (*See* Guilty Plea, *United States v. Kang*, No. 18-CR-184 (RJD), Dkt. 117 (E.D.N.Y. filed Mar. 30, 2021).) On November 9, 2021, a jury found Mr. Won guilty of conspiracy to commit wire fraud, conspiracy to commit security fraud, conspiracy to commit money laundering, and securities fraud. (*See* Jury Verdict, *United States v. Won*, No. 18-CR-184 (RPK), Dkt. 167 (E.D.N.Y. filed Nov. 12, 2021).)

On August 31, 2022, the Court entered a Consent Order and Final Judgment against Mr. Kang, finding him liable for Counts 1 and 2. (Dkt. 62 at 7–8.) On September 19, 2024, upon motion by Plaintiff, the Court entered summary judgment against Mr. Won, finding him liable for Counts 1 through 6. (*See* John Won Summary Judgment Order ("SJ Order"), Dkt. 66 at 3, 11–16.)

On August 21, 2025, Plaintiff filed the Motion, seeking default judgment against Safety Capital and GNS. A motion hearing was held, and on December 15, 2025, Plaintiff supplemented its Motion ("Supplemental Motion," Dkt. 79) and attached a spreadsheet analyzing Defaulting Defendants' bank accounts and their transactions with past customers (*See* Dkt. 79-2).

## DISCUSSION

### I.   Legal Standard for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

The Court may "first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotation omitted). Plaintiff must demonstrate proper service of the summons and complaint, *see Advanced Cap. Com. Grp.,*

5

*Inc. v. Suarez,* No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sep. 20, 2013), and establish compliance with the procedural requirements of Local Civil Rules 7.1 and 55.2. *See* L.R. 7.1, 55.2.

In addition, the Court must also determine whether Plaintiff's "allegations establish [the defendant's] liability as a matter of law." *See Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009); *see also Mickalis,* 645 F.3d at 137. In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor . . . ." *Finkel,* 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez,* No. 18-CV-6476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted,* 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established . . . ." *Klideris v. Trattoria El Greco,* No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sep. 23, 2011), *R&R adopted,* 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II. Jurisdiction and Default

### A. Subject Matter Jurisdiction

The Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1345.

### B. Personal Jurisdiction

"[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).  New York has general jurisdiction over corporations formed under its laws and operating within the state.  *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sep. 7, 2018).

Defaulting Defendants are New York corporations.  On October 5, 2015, Plaintiff properly served Safety Capital and GNS by delivering copies of the summons and complaint to the New York Secretary of State.  (*See* Affs. of Service, Dkts. 5–6); *see also* Fed. R. Civ. P. 4(e); N.Y. Bus. Corp. Law § 306(b)(1); *Burns v. Scott*, 635 F. Supp. 3d 258, 273 (S.D.N.Y. 2022).  Accordingly, the Court has personal jurisdiction over Defaulting Defendants.

### C. Defendants' Default

Defaulting Defendants did not appear through counsel as required for corporations (*see Latttanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007)) or otherwise respond to the Complaint, and have, therefore, defaulted.[2]

### III.    Procedural Compliance

As part of this Motion and in compliance with the Local Civil Rules, Plaintiff included a Notice of Motion (Dkt. 74), *see* L.R. 7.1(a)(1); a Memorandum of Law in support of the Motion (Motion, Dkt. 74-1), *see* L.R. 7.1(a)(2); a declaration showing that the Clerk has entered default and that Defendants are not incompetent or minors (Dkt. 74-2), *see* L.R. 55.2(a)(1); a Proposed Default Judgment Order detailing the proposed judgment to be entered (Dkt. 74-3), *see* L.R. 55.2(a)(2); proof of having mailed the motion papers and the Clerk's Certificate of Default to Defaulting Defendants at their last known business addresses (Affs. of Service, Dkts. 74, 78, 80–81.), *see* L.R. 55.2(a)(3); a statement of damages with supporting documentation affirmed by Plaintiff's financial investigator with personal knowledge

---

[2] Mr. Won appeared at the November 25, 2025 Motion Hearing and objected to Plaintiff's arguments in support of the Motion.  However, because Mr. Won is not an attorney, he may not appear on behalf of GNS.

(Giglio Decl. to the Motion, Dkt. 74-2; Giglio Decl. to the Supplemental Motion, Dkt. 79; Spreadsheet Analyzing Safety Capital's and GNS's Bank Accounts, Dkt. 79-2), *see* L.R. 55.2(c).

## IV.    Analysis

Counts 1 through 5 are brought against both Safety Capital and GNS, and Count 6 is only brought against GNS.  (Compl. ¶¶ 62–110.)  Plaintiff states that it relies on the "well-pled allegations of the Complaint" (*See* Nov. 25, 2025 Hr'g Tr. 5:6–13:12; Motion at 17; Supplemental Motion at 4–7).[3]

### A.  Count 1 against Safety Capital and GNS: Retail Forex Fraud, Sections 4b(a)(2)(A) and (C), 7 U.S.C. § 6b(a)(2)(A) and (C), and Regulation 5.2(b)(1) and (3), 17 C.F.R. 5.2(b)(1) and (3)

Plaintiff contends that Safety Capital and GNS are liable for Count 1 because they intentionally or recklessly made false and misleading misrepresentations to forex customers.  (Compl. ¶¶ 62–72; Supplemental Motion at 4–5.)

Under sections 4b(a)(2)(A) and (C) of the Act, it is unlawful to contract the sale of a commodity in interstate commerce through attempted or actual fraud and cheating, as well as willful or attempted deceit.  *See* 7 U.S.C. § 6b(a)(2)(A), (C).

Sections 5.2(b)(1) and (3) of the Regulations also prohibit the use of mail or "any means or instrumentality of interstate commerce" for retail forex transactions as a way to cheat, defraud, mispresent, or deceive others.  *See* 17 C.F.R. 5.2(b)(1)–(3).

---

[3] Plaintiff also contends that *res judicata* precludes Safety Capital from relitigating Counts 1 and 2 and GNS from relitigating Counts 1 through 6 based on the judgments entered against Mr. Kang and Mr. Won.  (*See* Motion 15–17.)  However, Plaintiff has not stated a basis for applying *res judicata* offensively rather than defensively. *See Thermal Surgical, LLC v. Brown*, 150 F.4th 115, 121 (2d Cir. 2025) ("[W]e have serious doubts as to whether preclusion can *ever* be used offensively to compel a judgment rather than resist a claim.").  Because I find liability based on the well-pled allegations of the Complaint, consideration of Plaintiff's *res judicata* argument as a basis for entering judgment is unnecessary.

Safety Capital and GNS falsely guaranteed 10% profits per month for off-exchange retail forex transactions without any risk of loss. (Compl. ¶¶ 34, 66–67.) However, their customers never obtained 10% monthly profits and instead, lost money. (*See id.*) Safety Capital and GNS also misrepresented to customers that they would obtain $100,000 in profit from a $500 investment and misappropriated customer funds for personal and business expenses rather than trading forex transactions. (*See* Compl. ¶¶ 34, 42, 66–68.)

Accordingly, I find that Safety Capital and GNS are liable for retail forex fraud as set forth in Count 1.

### B. Count 2 against Safety Capital and GNS: Fraud by a CPO or CTA (or AP thereof) in violation of Section 4o(1)(A)–(B), 7 U.S.C. § 6o(1)(A)–(B)

Plaintiff contends that Safety Capital and GNS, in unregistered capacities, committed fraud as CPOs or CTAs. (*See* Compl. ¶¶ 34–46, 76–79; Supplemental Motion at 5.)

The Act prohibits registered and unregistered CTAs, CPOs, and APs of CTAs and CPOs from using the mail or "any means or instrumentality of interstate commerce" to defraud or deceive others. *See* 7 U.S.C. § 6o(1)(A)–(B).

Safety Capital and GNS acted as CPOs when they "represented to pool participants that they would use pool funds to trade retail off-exchange forex transactions" on behalf of the participants. (*See* Compl. ¶ 42.) Safety Capital and GNS also acted as CTAs when they advised customers about retail forex transactions through "publications, writings, or electronic media." (*See id.* ¶ 76.) As discussed *supra*, Safety Capital and GNS committed fraud against their customers through multiple instances of false guarantees, misrepresentations, and acts of misappropriation, and they did so while acting as CPOs and CTAs.

Accordingly, I find that Safety Capital and GNS are liable for fraud as CPOs and CTAs as set forth in Count 2.

9

### C.  Count 3 against Safety Capital and GNS: Solicitation and Acceptance of Retail Forex Orders from Retail Forex Clients without Being Registered, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa)–(cc)

Plaintiff contends that Safety Capital and GNS are liable under Count 3 because they were never registered with the Commission when they solicited or accepted retail forex trading orders, and they never qualified for any Commission exemptions.  (*See* Compl. ¶¶ 34–48; 50–55; Supplemental Motion at 5.)

The Act prohibits an unregistered person from soliciting or accepting orders from a non-eligible contract participant to conduct forex transactions, exercising discretionary trading authority over forex transactions, or operating or soliciting funds for a commodity pool in connection with transactions in foreign currencies.  7 U.S.C. § 2(c)(2)(iii)(I)(aa)–(cc).

Safety Capital has never been registered with the Commission, and GNS only registered with the Commission on or around October 21, 2013.  (*See* Compl. ¶¶ 50–55.)  Nevertheless, from at least October 2010 through December 2013, Safety Capital and GNS traded and managed retail forex contracts for customers, solicited investors in a commodity pool, and traded retail forex contracts with customer funds as a single unit.  (*See id.* ¶¶ 34–48; 50–55; *see also* Supplemental Motion at 5–6; SJ Order at 16–17.)

Accordingly, I find that Safety Capital and GNS are liable for violating retail forex prohibitions as set forth in Count 3.

### D.  Count 4 against Safety Capital and GNS: Commingling Pool Funds with Non-Pool Property, 17 C.F.R. § 4.20(a)–(c)

Plaintiff argues that Safety Capital and GNS violated Count 4 when they deposited pool funds into their own bank accounts rather than separate bank accounts.  (*See* Compl. ¶ 49; Supplemental Motion at 6.)

The Commission's Regulation 4.20(a) requires CPOs, whether registered or not, to operate their commodity pools as legal entities separate from that of the CPOs.  *See* 17 C.F.R. § 4.20(a).

10

The Commission's Regulations 4.20(b) and (c) also prohibit CPOs, whether registered or not, from receiving pool participants' funds in any name other than that of the pool and from commingling pool property with non-pool property. *See* 17 C.F.R. § 4.20(b)–(c).

Safety Capital and GNS commingled pool funds with non-pool property by depositing pool participant funds in the same bank accounts used for ForexnPower's salaries and business expenses, instead of depositing customer funds into a separate bank account in the pool's name. (*See* Compl. ¶ 49; Supplemental Motion at 6; *see also* SJ Order at 19.)

Accordingly, I find that Safety Capital and GNS are liable for commingling pool funds with non-pool property as set forth in Count 4.

### E. Count 5 against Safety Capital and GNS: Failure to Register as a Retail Forex CPO and CTA, 7 U.S.C. § 6m(1) and 17 C.F.R. § 5.3(a)(2)–(3)

Plaintiff argues that Safety Capital and GNS are liable under Count 5 because they acted as unregistered CPOs through the solicitation and acceptance of pool funds and as unregistered CTAs through the collective management of retail forex trading accounts of at least 55 clients. (*See* Compl. ¶¶ 50–55; Supplemental Motion at 6.)

Under Section 4m(1) of the Act, it is unlawful for unregistered CPOs or CTAs to use mail or any means or instrumentality of interstate commerce in connection with their businesses as CPOs or CTAs. 7 U.S.C. § 6m(1).

Regulations 5.3(a)(2) through (3) also require that all CPOs and CTAs register with the Commission. 17 C.F.R. § 5.3(a)(2)–(3).

Safety Capital has never registered as a CPO or CTA, and GNS was not registered as a CPO or CTA before or around October 21, 2013. (*See* Compl. ¶¶ 50–55; *see also* Supplemental Motion at 6; SJ Order at 16.) Nevertheless, Safety Capital and GNS acted as CPOs and CTAs in unregistered capacities during the time they were unregistered. (*See* Compl. ¶¶ 42, 76.)

Accordingly, I find Safety Capital and GNS are liable under Count 5 for failure to register as

retail forex CPOs and CTAs.

### F. Count Six against GNS: Failure to Produce Documents upon the Commission's Request, 17 C.F.R. § 1.31

Plaintiff contends that GNS violated Count 6 because, despite being registered with the Commission on or around April 2014, GNS failed to respond to Plaintiff's document subpoena. (*See* Compl. ¶¶ 107–09.)

Regulation 1.31 requires a party registered with the Commission to open its books and records to inspection by any representative of the Commission and produce its books and records in a form specified by any representative of the Commission. *See* 17 C.F.R. § 1.31.

Starting on or about October 21, 2013 when GNS registered with the Commission as a CPO and CTA through the present, GNS was required to respond to any of Plaintiff's requests for documents. *See id.*; (*see also* Compl. ¶ 51.) In April 2014, Plaintiff served an administrative subpoena on GNS at its registered business address, as well as the home address of Mr. Won, GNS's President. (*See* Compl. ¶ 60.) Mr. Won verbally acknowledged receipt of Plaintiff's subpoena, yet GNS failed to produce documents. (*See id.* ¶ 61.) Therefore, GNS violated Regulation 1.31.

Accordingly, I find that GNS is liable under Count 6 for failure to produce documents upon the Commission's request.

## V.   Relief

The Commission seeks a permanent injunction, full restitution, and the imposition of a civil monetary penalty. (*See* Motion at 17–23.)

### A.  Permanent Injunction

Pursuant to Section 6(c) of the Act, the Commission may seek a permanent injunction prohibiting a defendant from engaging in conduct that violates any provision of the Act or any rule, regulation, or order thereunder. *See* 7 U.S.C. § 13a-1; *see also CFTC v. Kim*, No. 11-CV-1013 (DLC), 2011 WL 1642772, at *1 (S.D.N.Y. Apr. 15, 2011). To obtain this relief, the Commission need only

show that a violation of the Act occurred and that there is a reasonable likelihood that the violation will be repeated. *CFTC v. Commodity Inv. Grp.*, No. 05-CV-5741 (HB), 2006 WL 353466, at *1 (S.D.N.Y. Feb. 11, 2006) (citing *CFTC v. British Am. Commodity Options*, 560 F. 2d 135, 141 (2d Cir. 1977)). Moreover, a district court may infer the likelihood of future violations from the defendant's past unlawful conduct. *CFTC v. Kelly*, 736 F. Supp. 2d 801, 804 (S.D.N.Y. 2010) (citing *CFTC v. Am. Bd. of Trade, Inc.*, 803 F. 2d 1242, 1250–1251 (2d Cir. 1986)).

Safety Capital's and GNS's past unlawful conduct indicates a likelihood of continued violations absent a permanent injunction. As previously found with regard to Mr. Won, Defaulting Defendants committed numerous knowingly fraudulent acts of solicitation and misappropriation of customer funds over several years. (*See* SJ Order at 20.) Defaulting Defendants' actions were not isolated occurrences; rather, they engaged in a comprehensive scheme that demonstrated a pattern of intentional fraudulent behavior. (*See id.*)

Based on these facts, I find that there is a "reasonable likelihood" of future violations. *See Commodity Inv. Grp.*, 2006 WL 353466, at *1. Accordingly, I respectfully recommend that the Court grant the permanent injunction in the manner detailed in the Commission's Proposed Order. *See* 7 U.S.C. § 13a-1 ("Upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond."); *see also CFTC v. Int'l Foreign Currency, Inc.*, No. 03-CV-3577 (DLI) (ARL), 2012 WL 13105801, at *5 (E.D.N.Y. Jan. 30, 2012).

### B. Restitution

Pursuant to Section 6(c) of the Act, a district court has the authority to grant ancillary relief for violations of the Act, including but not limited to, ordering restitution. 7 U.S.C. § 13a-1(d)(3)(A). Restitution is calculated as the amount of losses proximately caused by such violation. *See id.* "The Second Circuit has concluded that the proper measure of restitution is the benefit unjustly received by a defendant or a defendant's illegally gotten gains." *Int'l Foreign Currency, Inc.*, 2012 WL 13105801,

at *6 (quoting *CFTC v. Rolando*, 589 F. Supp. 2d 159, 173 (D. Conn. 2008)).

Joint and several restitution in the amount of $835,058 was ordered against Mr. Kang and Mr. Won.  (SJ Order at 3; Kang Consent Order at 10.)

I respectfully recommend that the Court find Safety Capital and GNS liable for the amount defrauded from victims and grant the Commission's request to order that Safety Capital and GNS pay $835,058 as restitution, jointly and severally with Mr. Kang and Mr. Won.

### C.  Civil Monetary Penalty

Section 6c(d)(1) of the Act and Regulation 143.8(b) permit the Commission to seek, and give the Court jurisdiction to impose, a civil penalty on any person found in the action to have committed any violation of the Act.  7 U.S.C. § 13a-1(d)(1); 17 C.F.R. § 143.8(b)(1)–(2).  "The purpose of such sanction is to further the Act's remedial policies, and deter others from committing similar kinds of violations."  *Int'l Foreign Currency, Inc.*, 2012 WL 13105801, at *6 (citing *Reddy v. CFTC*, 191 F. 3d 109, 123 (2d Cir. 1999)).  Given that Safety Capital and GNS's conduct occurred from at least October 2010 through December 2013, the civil monetary penalty may be up to the greater of $140,000 per violation or triple a defendant's monetary gain.  *See* 7 U.S.C. § 13a-1(d)(1); 17 C.F.R. § 143.8(b)(1)–(2).

"[C]ivil monetary penalties are appropriate where they are commensurate with the gravity of the violations found and where they reflect and seek to deter the betrayal of the public interest caused by a defendant's abuse of customers and a regulated public market."  *Int'l Foreign Currency, Inc.*, 2012 WL 13105801, at *6 (citing *Reddy*, 191 F. 3d at 128).  As previously found with Mr. Won, Defaulting Defendants not only engaged in a systematic and deliberate scheme to defraud the public, but they deliberately exploited their access to a vulnerable community—Korean-language speakers in Queens who were totally reliant on Defendants to protect and manage their investments.  (*See* SJ Order at 22.)

The Commission alleges that Safety Capital obtained approximately $480,381, and GNS obtained approximately $62,034 from the fraudulent scheme.  (*See* Giglio Decl. to Motion, Dkt. 74-2

14

¶¶ 10–11; Giglio Decl. to Supplemental Motion, Dkt. 79-1 ¶ 4; Spreadsheet Analyzing Safety Capital's and GNS's Bank Accounts, Dkt. 79-2.)  Given Safety Capital and GNS's egregious conduct and to deter future conduct, I respectfully recommend that the Court grant, pursuant to Section 6c(d)(1)(A) of the Act, the Commission's request for a civil monetary penalty of triple the monetary gain (*see* Motion at 23), which would equal $1,441,143 against Safety Capital and $186,102 against GNS.  *See, e.g., Int'l Foreign Currency, Inc.*, 2012 WL 13105801, at *6 (imposing penalty of $120,000 per violation for total of $3,840,000 for fraudulent scheme involving 32 victims and 32 separate violations of the Act).

## CONCLUSION

Based on the foregoing, I respectfully recommend that the Motion be GRANTED, and that Safety Capital be found liable for the violations charged in Counts 1 through 5, and GNS be found liable for the violations charged in Counts 1 through 6.  I also respectfully recommend that the Court grant the permanent injunction detailed in the Commission's Proposed Order, order that Safety Capital and GNS pay $835,058 as restitution, jointly and severally with Mr. Kang and Mr. Won, and impose civil penalties of $1,441,143 against Safety Capital and $186,102 against GNS.

Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any such objection waives the right to appeal to the District Court's Order.  *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

### SO ORDERED:

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          February 13, 2026

15